NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICHARD RALPH MALCOLM,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1084

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00505-SSS, Judge Stephen S. Schwartz.

---

Decided:  August 7, 2023

---

RICHARD RALPH MALCOLM, Hollywood, FL, pro se.

ANDREW JAMES HUNTER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

---

Before LOURIE, BRYSON, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Pro Se Appellant Richard Ralph Malcolm appeals from the United States Court of Federal Claims' ("Claims Court") decision, in which the Claims Court upheld the Board for Correction of Naval Records' ("BCNR") denial of Mr. Malcolm's request that the BCNR correct his military record to change the narrative reason for his separation to "disability" for disability retirement pay purposes and to remove derogatory information related to his misconduct. *Malcolm v. United States*, No. 20-505C, 2022 WL 4592894 (Fed. Cl. Sept. 30, 2022) ("*Decision*"). We affirm.

## BACKGROUND

Mr. Malcolm enlisted in the Navy on February 1, 2002. Appx303.[1] But his time in the Navy was short-lived. He often complained of headaches, dizziness, and a general dissatisfaction with life in the Navy. *See, e.g.*, Appx463–76.

In the spring of 2002, during basic training, a clinical psychologist examined him and diagnosed him as having an "Occupational Problem." Appx302; *see also* Appx21. Later that year, he reported to the USS Abraham Lincoln, where his duties were to assist in the launch, recovery, service support, turnaround, and daily maintenance of F-14D aircraft. Appx341. In September, he was again diagnosed with an occupational problem, along with a provisional diagnosis of adjustment disorder. Appx474; *see also* Appx21. In October, the Navy found that Mr. Malcolm had violated the Uniform Code of Military Justice based on his insubordinate conduct toward a petty officer, failure to obey an order or regulation, and making provocative speeches or gestures. Appx372. As a result, he was "awarded nonjudicial punishment," which included a reduction in rank and

---

[1] "Appx" refers to the government's "second corrected appendix to informal brief." ECF No. 14.

temporary pay forfeiture. Appx372–82. In November, he was punished for four separate incidences of failure to report for duty and for sexually harassing a female airman. Appx375; Appx377. Shortly thereafter, the Navy notified him that it would commence separation proceedings against him, that the separation was for misconduct for commission of a serious offense, and that his service may be characterized as "Other than Honorable." Appx368–69. He waived his rights to counsel, to see documents, and to request an administrative board. Appx368. And in December 2002, he was separated from active duty for misconduct and "under other than honorable conditions." Appx308.

A decade later, Mr. Malcolm was diagnosed with bipolar I disorder. *See Malcolm v. United States*, 690 F. App'x 687, 688 (Fed. Cir. 2017) ("*Malcolm I*"). Ever since, he has tried to correct his military records, asserting that he suffered from bipolar disorder when he served. He first filed a request before the Navy Discharge Review Board—which has the power to reclassify a discharge characterization, *see* 10 U.S.C. § 1553(a)—to upgrade the character of his discharge from "other than honorable" to "honorable." *Malcolm I*, 690 F. App'x at 688. It denied his request. *Id.* He then requested the BCNR—which can "correct any military record" when "necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1)—to upgrade his discharge to "honorable" and to expunge his disciplinary records. *Malcolm I*, 690 F. App'x at 688. The BCNR denied his request. *Id.*

So he filed suit in the Claims Court, seeking to correct his naval records to reflect an "honorable" discharge, an award of back pay, and an award of military disability retirement pay. *Id.* The Claims Court dismissed the complaint for lack of jurisdiction, finding, among other things, that the claim for military disability retirement pay was not ripe and that the Claims Court lacked jurisdiction over

his non-monetary request to change his discharge status. *See id.* We affirmed. *Id.* at 689–90.

Mr. Malcolm then submitted another request to the BCNR, seeking to change his narrative reason for separation to disability and to obtain military disability retirement pay. Appx87. He asserted that he suffered from bipolar disorder at the time of his discharge and should have been referred to the Disability Evaluation System. Appx88. The BCNR denied his request. Appx89. Among other things, it concluded that there was insufficient evidence to support that he was suffering from bipolar disorder at the time of his discharge, noting that he was twice diagnosed in the Navy with occupational problems—not with bipolar disorder. Appx88. It further explained that his "Global Assessment of Functioning (GAF) score of 70 at the time indicated only mild symptoms or some occupational functioning," which "was consistent with medical notations that indicated [he] still possessed good judgment, insight, and impulse control." *Id.* This "led the Board to conclude that [he] w[as] capable of performing the duties of [his] office, grade, rank or rating despite any conditions [he] may have possessed." *Id.* The BCNR found that there was insufficient evidence to support that he was unfit for continued naval service due to bipolar disorder. *Id.*

Mr. Malcolm filed suit in the Claims Court. *See Malcolm v. United States*, 752 F. App'x 973, 975 (Fed. Cir. 2018) ("*Malcolm II*"). The Claims Court granted the government's motion for judgment on the administrative record and denied Mr. Malcolm's competing motion. *Id.* On appeal to this court, we affirmed. *Id.* at 977. We found, among other things, that substantial evidence supported the BCNR's finding that Mr. Malcolm failed to prove that he suffered from bipolar disorder in 2002. *Id.* at 976.

In December 2018, Mr. Malcolm filed another claim at the BCNR, this time providing a 2018 psychiatric evaluation from the VA, which he contended showed that his

bipolar condition existed at the time of his discharge. Appx41–57.  He asked the BCNR to change his reason for separation to disability and to remove all derogatory information (including that he received nonjudicial punishment) from his record.  Appx36; Appx40–41.

The BCNR granted partial relief.  Appx37.  It concluded that "liberal consideration" "mandates that his narrative reason for separation be changed to Secretarial Authority and [that] his characterization of service be upgraded to General under Honorable conditions." *Id.*  It also concluded that he "should have been administratively separated during basic training after being diagnosed with occupational problems," and that, "by placing him in an operational environment, the Navy likely exacerbated his adjustment disorder" which contributed to "his misconduct." *Id.*  It found that, given "his diagnosed adjustment disorder" and under the liberal consideration standard, his misconduct was not serious enough to merit an Other than Honorable characterization. *Id.*

Yet it found that he was responsible for his misconduct and so was "legally discharged with an Other than Honorable characterization upon waiving his administrative separation board." *Id.*  Thus, it explained, the derogatory material should remain in his record. *Id.*  The BCNR also rejected his request to change his reason for separation to disability.  Appx37–38.  According to the BCNR, there was "insufficient evidence to [show] that [he] suffer[ed] from a compensable disability condition at the time of his discharge."  Appx37.  The BCNR thought that "too many potential intervening factors exist to be able to rely on the 2013 diagnosis as a basis to overturn the 2002 adjustment disorder diagnosis."  Appx37–38.  So, even "applying liberal consideration to the circumstances of the case," there was

insufficient evidence to support changing his narrative to disability. Appx38.

Mr. Malcolm again sued in the Claims Court, seeking "retroactive disability benefits" and "removal of all negative marks in [his] record." Appx528–30. The Claims Court remanded, finding that the BCNR failed to consider whether the 2018 VA evaluation showed that Mr. Malcolm had undiagnosed conditions during his service. *Decision*, at *2.

On remand, the BCNR sought an Advisory Opinion to consider the 2018 VA evaluation. Appx33. After receiving the Advisory Opinion, the BCNR reconsidered Mr. Malcolm's argument (1) that he had been unfit for naval service due to bipolar disorder and so should have his reason for separation changed to disability, and (2) that his record of misconduct should be removed. Appx12. It concluded that the VA evaluation did not show that Mr. Malcolm suffered from bipolar disorder at the time of his discharge. Appx12–13. The BCNR found that his 2002 medical records were more probative of his mental health condition in 2002 than were his 2013 bipolar disorder diagnosis and the 2018 VA evaluation; that, "[i]n those [2002] medical evaluations, it was determined that [Mr. Malcolm] suffered from 'occupational problems,' or possibly an adjustment disorder, but not Bipolar Disorder"; and that Mr. Malcolm was "more likely than not correctly diagnosed with 'occupational problems' at the time of [his] discharge." *Id.* It found that there was thus "insufficient evidence to conclude that [Mr. Malcolm] should have been diagnosed with Bipolar Disorder in 2002 or found unfit for continued naval service as a result of the condition." Appx13. The BCNR also reaffirmed its finding that he was mentally responsible for his misconduct, and that the derogatory information related to that misconduct should remain in his record. *Id.* And finally, it affirmed its pre-remand decision to upgrade his narrative reason for separation to Secretarial Authority and his

characterization of service to General under Honorable conditions. *Id.*

On return to the Claims Court, the Claims Court granted the government's motion for judgment on the administrative record; denied Mr. Malcolm's competing motion; and dismissed the case. *Decision*, at *1. The Claims Court explained that Mr. Malcolm's claims for disability retirement arise under 10 U.S.C. § 1201. *Id.* at *3 n.3. The Claims Court found that the BCNR could reasonably credit the 2002 evidence over the 2018 VA evaluation, and that "[s]ubstantial evidence supports the BCNR's conclusion that Mr. Malcolm was not medically unfit for service because of his mental condition at the time of separation." *Id.* at *4.

Mr. Malcolm appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review legal determinations by the Claims Court, including judgment on the administrative record, de novo. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). We apply the same standard as the Claims Court: We do not disturb the BCNR's determination unless it was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Id.*

To receive disability retirement pay, a service member must be found "unfit to perform the duties of the member's office, grade, rank, or rating" at the time of the discharge "because of physical disability." 10 U.S.C. § 1201(a). The Navy implements this statute in its policies and regulations, including the Secretary of the Navy Instruction ("SECNAVINST"). *See Kelly v. United States*, 69 F.4th 887, 889 (Fed. Cir. 2023). "Where a service member has not been considered or has been rejected for disability retirement prior to leaving active service, the service member can pursue disability retirement before [the] [BCNR]."

*LaBonte v. United States*, 43 F.4th 1357, 1361 n.4 (Fed. Cir. 2022) (citations omitted).  Here, Mr. Malcolm pursued disability retirement at the BCNR, contending that he was unfit to perform his duties because he suffered from bipolar disorder.  The BCNR disagreed and the Claims Court affirmed.

On appeal, Mr. Malcolm first contends, without elaboration, that the "trial court failed to take into account [his] work performance" and that he "was clearly in a state of psychosis." Appellant's Inf. Br. 1.  We do not think that Mr. Malcolm has shown any error.

The BCNR's decision turned on whether Mr. Malcolm suffered from a compensable disability—that is, whether Mr. Malcolm was unfit for duty "*because* of physical disability." 10 U.S.C. § 1201(a) (emphasis added).  And in considering that issue, the BCNR addressed Mr. Malcolm's assertion that he was in a state of psychosis during his time in the service.  In particular, the BCNR found that the 2018 VA evaluation did not support that his alleged "psychosis" originated at bootcamp or during his deployment. Appx12. The BCNR found that Mr. Malcolm's 2002 medical records were "far more reliable and credible evidence of his mental health condition" in 2002 than the 2018 VA evaluation, and that those medical evaluations determined that Mr. Malcolm suffered not from bipolar disorder but from occupational problems and (provisionally) from adjustment disorder. Appx12–13.  The Board thus found that it was more likely than not that Mr. Malcolm was correctly diagnosed with occupational problems and that there was insufficient evidence to conclude that he should have been diagnosed with bipolar disorder in 2002. Appx13.  These findings are supported by substantial evidence—including the medical records discussed in the Advisory Opinion on which the Board relied. *See, e.g.*, Appx12; Appx26–32; Appx302; Appx474.  And the Claims Court affirmed. *Decision*, at *4.  Mr. Malcolm's assertion that his contention

that he was in a state of psychosis was not considered therefore fails.[2]

So too does his argument that the trial court did not consider his work performance. Mr. Malcolm does not argue that his diagnosis of occupational problems (or his provisional diagnosis of adjustment disorder) could have been considered a compensable disability—even if those problems or disorders had rendered him unfit for service. That is not surprising given that the relevant regulations in force at the time he served explained that, although conditions like "Adjustment Disorders" "may become the basis for administrative separation," they "do *not* constitute a physical disability *despite the fact they may render a member unable to perform his or her duties.*" SECNAVINST 1850.4E, enclosure 8, ¶ 8013(a)(4) (emphasis added). Accordingly, even if Mr. Malcolm's conclusory assertion that the trial court failed to consider his work performance were correct, it would fail because he has not shown that under the circumstances here either the Claims Court or the BCNR was required to consider his work performance.

Next, Mr. Malcolm argues that the trial court applied the wrong law because it "did not invoke the liberal consideration standard under [the] Hagel, Carson, and Kurta Memos." Appellant's Inf. Br. 2. Mr. Malcolm does not elaborate on this argument. In any event, the BCNR applied liberal consideration to his request for correction and did so to his benefit. In its pre-remand decision, the BCNR applied liberal consideration in upgrading Mr. Malcolm's

---

[2]    Mr. Malcolm also argues that "bipolar rapid cycle is genetic in nature and clearly outweigh [sic] the discharge." Appellant's Inf. Br. 2. Because the Board did not err in finding that there was insufficient evidence to support that Mr. Malcolm should have been diagnosed with bipolar disorder at the time of his service, whether bipolar rapid cycle is genetic or not is irrelevant here.

narrative reason for separation to Secretarial Authority and his characterization of service to General under Honorable conditions. Appx37. The BCNR then affirmed those upgrades in its post-remand decision. Appx13. Mr. Malcolm has neither pointed to where he argued to the Claims Court about the liberal consideration standard under the Memos nor shown that the Claims Court erred by not discussing that standard in its decision.

Finally, Mr. Malcolm argues that the trial court failed to consider two grounds for relief. As for the first ground, he conclusorily argues that the trial court failed to consider that he "requested attorney representation before discharge but was denied and [he] could not defend himself and his right to due process of law was violated." Appellant's Inf. Br. 2. But the Claims Court did address this argument and rejected it. *See Decision*, at \*3 n.4. To the extent that he is arguing that the Claims Court erred in doing so, he has waived that argument by failing to sufficiently develop it beyond his single-sentence assertion. *See Gelb v. Dept. of Veterans Affs.*, No. 2023-1157, 2023 WL 3493702, at \*7 n.6 (Fed. Cir. May 17, 2023) (nonprecedential) (finding that pro se appellant waived arguments by failing to develop them, explaining that "while 'pro se filings must be read liberally,'" "such filings must still be clear enough to enable effective review" (citations omitted)). And we note that we previously explained that Mr. Malcolm "waived his rights to counsel" at the time of discharge. *Malcolm II*, 752 F. App'x at 974; *see also* Appx368 (notice of separation on which Mr. Malcolm initialed that he waived his rights to counsel).

As for the second ground, Mr. Malcolm argues that the trial court failed to consider that he "was in and out of consciousness because he was deployed and put in a situation against the military's own rules." Appellant's Inf. Br. 2. He does not elaborate on this argument. But as far as we can tell from his informal brief, it appears to be simply more argument that he suffered from bipolar disorder and

was in a state of psychosis at the time of his discharge. It thus fails for the reasons discussed above: Substantial evidence supports the Board's contrary findings (later affirmed by the Claims Court).

## CONCLUSION

We have considered Mr. Malcolm's other arguments and find them unpersuasive. For the above reasons, we affirm.

## **AFFIRMED**

### COSTS

No costs.